And we'll go to the last RD page for today, which is Mitchell Partners vs. IREX. Thank you. Who wrote it? Oh, oh, I know who wrote it. The one who was for him. Michelle. These were not stapled. There are a lot of those cases in the arts. Okay. Good morning, Your Honors. Good morning. Is it still? Yeah, it still is. It still is, Your Honor. Yeah. My name is George Krohner. I represent the appellant, Mitchell Partners LP, and with the Court's permission, I'll reserve three minutes for rebuttal. Granted. The principal issue in this case, Your Honor, is whether Pennsylvania's statutory appraisal       Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. In this case, it turns out that this Court has answered that question. In 1988 in Herskowitz v. Nutra Systems, this Court says, and I'm quoting now, Thus, it is a clear holding that in Pennsylvania the statutory appraisal cause of action coexists with common law causes of action. Judge Gibbons' decision, and I remember that well. It was, Your Honor.      coexists with common law causes of action. where the appraisal remedy is available even absent misconduct of corporate officials. It was hardly enacted to provide a shield for such misconduct. Given that holding, how is it that the District Court came to the conclusion that statutory appraisal was the sole and exclusive remedy for Mitchell Partners here? The answer seems to lie in the fact that the District Court looked at the Jones and Laughlin trilogy of cases that the Pennsylvania appellate courts had addressed in the late 70s and early 80s and seized on a sentence in the Herskowitz opinion that said, We note that this action was commenced at the pre-merger stage and that preliminary injunctive relief was denied. Now, the problem is, if you stop with that first clause and don't finish the sentence, the rest of the sentence is what provides the key. And that preliminary injunctive relief was denied on the ground that an adequate damages remedy could be fashioned for the shareholders. Once you consider that aspect of the Herskowitz holding, it is impossible to reconcile the District Court's conclusion with the Herskowitz opinion. The adequate remedy could have been an appraisal. Not true, Your Honor. Not an adequate damage remedy because an appraisal court can never fashion a damage remedy. An appraisal court has no statutory authority to fashion a damage remedy. An appraisal court by statute is limited to determining fair value, that is, the intrinsic value of the corporate stock on the date immediately preceding the transaction, regardless of any other facts that might indicate that damages are warranted. That's why, Your Honor, appraisal and the appraisal remedy, there is an appraisal proceeding that's proceeding in tandem with this action. Well, the appraisal remedy was originally designed to provide liquidity to minority shareholders while at the same time prevent them from thwarting mergers through injunctions. So how does permitting a suit for damages based on fiduciary breach, fiduciary breach, thwart or unwind the merger? It doesn't at all, Your Honor. In fact, the one point we would agree with the defendants in this case, the appellees, is that this action in no way seeks to unwind the merger that occurred. There is no request for equitable relief in the form of an injunction. That, if that relief was sought, that must be sought pre-merger. That's what the statute, the 11th section, 1105 statute in the Pennsylvania Business Corporation Law provides. It's addressed to equitable forms of relief.  The merger should be available in this action. This action is brought to provide a damage remedy for minority shareholders, not, frankly, in any way related to the corporate merger transaction, but related to the breaches of fiduciary duty that the controlling majority engaged in, in orchestrating and implementing that transaction. But that breach of the fiduciary duties is intended to show that as a result of the officers' conduct, you didn't get as much as you should have from the shares, or the majority got more than their share as a result of your shares being devalued. Isn't that, in essence, what you are trying to show? As a result of the breach of fiduciary duties? In a large sense, Your Honor, I would agree that the remedy in this action will represent some sort of determination of what the actual value of the shares should have been as opposed to what was actually offered as the offering price in the proxy statement. But it's more than that. I'm sure you're anticipating my next question. Isn't that the same as appraisal? Exactly. No, Your Honor, it's not. And I'd say that for two reasons. Appraisal is, as I said, defined statutorily to fix the fair price of the stock on the date immediately preceding the transaction. By definition, it excludes considerations like transactional synergies, future performance, punitive damages, recissory damages, which is different than rescission, certainly, which is the equitable form of merger, but recissory damages. In other words, we would contend in this action that if it could be shown that the controlling majority manipulated this transaction, not only to produce an unfair cash-out price, but essentially to eliminate the minority shareholders. So you cannot bring in the manipulation and perhaps deceit or fraud contenders to make interventions in the appraisal action? Not only can't bring them in, Your Honor, we can't even make the people who committed those acts parties to the appraisal proceeding. By statute, the appraisal proceeding is limited solely to the corporation that was involved in the merger. Neither of the parties that committed the acts we complain about in this case, the claims themselves, or the remedies we seek in this case, can be considered by the appraisal court. It's not a matter of discretion. They're jurisdictionally prohibited. That's what Jones and Laughlin held. Judge Clark has a question. Mr. Kroner, I have read all of the cases that I can find on what happens post-merger, and they all coalesce in saying that you are limited to the appraisal value. Now, the Jones case, Hershkowitz doesn't deny that. Hershkowitz is a pre-merger case. The Jones case, 488 Pennsylvania 524, is the one that sets the standard for that. And I don't see anything that contradicts it in the post-merger context. Everything I see says that you can only get the relief that you are arguing for in a pre-merger context. Can you point me to a case that is post-merger, but which permits the common law remedies that you claim are available to you? I cannot point you to a Pennsylvania case because, in fact, that pre-merger, post-merger distinction has never been extrapolated upon either by Pennsylvania's own appellate courts or by this Court post-Hershkowitz. I can certainly point you to the Delaware line of cases that make it clear under Delaware corporate law. Does that have anything to do with this, though? First of all, I point out, Your Honor, that the reason that Jones and Laughlin would have limited any recovery to fair value is because the proceeding that precisely was at issue in the Jones and Laughlin trilogy was an appraisal proceeding. It wasn't a proceeding, it wasn't a case like this where there were common law causes of action being asserted and they were trying to limit the damages. Jones and Laughlin was the actual appraisal proceeding, and the reason it was up on dissenting shareholders in Jones and Laughlin had tried not to collect damages in Jones and Laughlin, had tried to have the appraisal court re-examine the underlying fairness of the merger in an effort to unwind that merger. And so Jones and Laughlin simply says, you cannot do that in an appraisal proceeding. An appraisal court cannot take into consideration the fairness of the merger. It is limited solely to fixing the fair value of the stock. That to me explains Jones and Laughlin. It was in no way, no Pennsylvania court involved in Jones and Laughlin was setting a standard for post-merger common law claims because they simply were not before the court in any way in Jones and Laughlin. Well, it interprets the Pennsylvania statute as I read it to provide only an appraisal as a remedy, and I must tell you that unless you can show me some other authority other than Hershkowitz, which I don't think is an apposite here in Pennsylvania, I am pretty much convinced by the language that appears in the Jones and Laughlin Steel Corporation case at 488 Pennsylvania. Again, Your Honor, all I can point to is that the Jones and Laughlin case you're referring to, the Supreme Court case, did not have before it in any way, shape, or form what the appropriate form of relief should be for post-merger common law briefs of fiduciary duty claims brought post-merger. It simply wasn't part of what the court was considering in that case because the court was only looking at an appraisal proceeding. I think Hershkowitz, in fact, is precisely more on point than the Jones and Laughlin trilogy precisely because Hershkowitz did, in fact, involve a case where common law briefs of fiduciary duty claims were brought. The court did note that they were brought pre-merger, but it noted that only in the case that the preliminary injunction that had been sought had been denied because an appropriate damage remedy could subsequently be fashioned for the shareholders. Well, where was that going to take place? It was going to take place after the merger, certainly, because the merger had already taken place. There was no effort in Hershkowitz to unwind the merger, and in fact, if you look, frankly, at the way that the district court approached its statute of an appraisal court to fashion a damage remedy for these kinds of claims. First of all. Did you try to raise this in some way in the Pennsylvania Supreme Court? In Hershkowitz, we predicted that the Pennsylvania Supreme Court would reject the defendant's interpretation of the appraisal statute as a bar to other causes of action, but that never happened. As far as I can tell, it never got to the Pennsylvania Supreme Court to say whether our prediction was correct or not. So why are you in federal court as distinguished from state court? Because, Your Honor, of the- Because in state court you could get to the-and I don't think this is-Pennsylvania recently took a certified question that my panel asked them and came out with a response, but we can't get this-this is not a case we're going to certify the Pennsylvania Supreme Court. Isn't that where you're going to get your relief, that you can get there? I mean, why are you in federal court? Because the-jurisdictionally, the parties that were involved in the common law dispute that has that issue in this case, the controlling shareholders or majority on one side and Mitchell partners on the other- Weren't diverse? They are diverse. So-oh, they are diverse. And so from a jurisdictional standpoint- You couldn't be in Pennsylvania court? I can't say that we couldn't be in Pennsylvania court, Your Honor, for a variety of reasons associated probably more with the class action aspects of this case. Federal court seemed a better forum. But you're asking us to decide a purely Pennsylvania law issue. I don't think that's unusual for this court. Well, mostly people-yeah, mostly people take Pennsylvania cases in Pennsylvania court. No, I'm not saying- Not only that. We have jurisdiction. I'm not questioning whether we have jurisdiction. I'm just questioning whether we are the court that should make Pennsylvania law when Pennsylvania hasn't done it. And Pennsylvania doesn't necessarily follow Delaware corporate law, as your friends on the other side point out. I can address that in my remaining time. Oh, I'm sorry. Yeah. Leonard, did you have more questions? No. Okay. We'll get you back. You saved time. Mike, how much did he save? Three minutes, Your Honor. Okay. May it please the Court, Cheryl Krause representing the Appellees and Cross Appellants in this matter, and I'd like to reserve two minutes of rebuttal time. What did you just say? We represent the Appellees and Cross Appellants in this matter, IREX Corporation. Yeah, but you don't get any reserve time. You have to take all your time now. Very well, Your Honor. Okay. I thought you said you were coming up again. Yeah. As a matter of cross appeal, I thought one would be better. No, no. And anything you have to say, you better say now. Absolutely, Your Honor. Okay. So where in the Pennsylvania appraisal statute does it distinguish between pre and post-merger time periods? Your Honor, the very structure of the appraisal of the statute at issue, which is section 1105, provides what the Pennsylvania legislature decided, with sound reasoning and common sense, are two different rights that shareholders have in this situation. One is that it provides that there shall not be any right to obtain, in the absence of fraud or fundamental unfairness, an injunction against a proposed plan or amendment. That is. Okay. So they're not asking for an injunction. Well, what that does provide, Your Honor, in terms of the legislature, is a decision that if someone has an issue with the process, if the challenge is to the fairness or the fraud in the process leading up to a merger, then the way a shareholder needs to approach that and to preserve that right is to bring an action for an injunction. The alternative that's laid out in the statute is that if what they're seeking is not to challenge the process. No. They're not seeking an injunction. They want money. They're saying that they were unfairly treated. They have an appraiser. There's evidence, difference of about $100 a share, as I recall, difference from the 60s and 160s, something I may be off on that. If the appraisal remedy is the exclusive post-merger remedy, what check is there on the majority? Your Honor, Pennsylvania, both the legislature and the Pennsylvania Supreme Court looked at this problem and came up with what is a reasonable and practical solution to balance competing interests. On the one hand, if they're alleging that because of inside dealing, which is what they're alleging, there's no check on the majority. What check is there on the majority to be unfair? The check on the majority, Your Honor, is in that first prong of the statute. If the shareholder has concerns about fraud or fundamental unfairness, then they bring an action pre-merger to stop the merger. I gather that the Pennsylvania legislature was not in favor or did not look favorably on a lot of pre-merger injunctions. They said, all right, you can have an appraisal. Now, if the appraisal isn't a fair appraisal, what check is there on the majority? There has to be some check somewhere, doesn't there, to be fair? Your Honor, absolutely. And what the Pennsylvania legislature and Supreme Court provided is that check is in the ability to bring an action raising the kinds of claims of fraud or fundamental unfairness to go along with breaches of fiduciary duty before the merger, if the shareholder doesn't care about the process. But that's a value judgment. If they don't want to necessarily enjoin the merger, and commerce doesn't proceed that way, but what they say is we want our fair share, is the relevant statutory provision entitled restriction on equitable relief? Why should a suit for damages be barred? Your Honor, the title here is certainly not controlled. I mean, they may not win the suit, but why should the suit be barred? Your Honor, the suit is barred because the Pennsylvania legislature was addressing a problem that is a common problem that legislatures and courts face in all realms. A common problem is that sometimes shareholders take advantage of minority shareholders. And that, Your Honor, is addressed in the first prong of the statute, which allows for a challenge to the validity of the merger, to an abuse of the process. But they're not challenging the validity of the merger. They're challenging the amount of money that they got. Your Honor, if that is, as I believe Appellant has conceded, all they're challenging, then what they're asking for is indeed an appraisal remedy. There are two different issues here. Yes. And they're saying the appraisal remedy that they got wasn't fair, and they want to be able to share that. And why shouldn't they be able to? On the contrary, Your Honor, what is going on here is this is a fiduciary duty claim. Your Honor, any fiduciary duty claim is a challenge to the process leading to the merger. The concept of a breach of fiduciary duty is that there was something invalid in the process leading up to the merger, so that the merger itself is invalid. It says the majority of shareholders took advantage of the minority shareholders. And if that, to the extent that is their challenge, it relates to pre-merger issues. If all they're asking for is more money for their shares, that is the essence of an appraisal action. Wasn't the principal concern of the legislature injunctive actions that would stop or put a halt to the mergers? In other words, wasn't the legislature concerned with allowing these mergers to go through without injunctions, but there is no specific language barring common law claims against the officers or the board? Your Honor, that was one of the concerns of the legislature. But the other concern is not simply about injunctions. It's dealing with a different problem that courts and legislatures face. I'm just looking at the statute. I just see injunctions there. Your Honor, the language of the statute has these two provisions. If you're challenging broader fundamental unfairness, in other words, if you're challenging the process, then you need to bring in action a pre-merger. If all you're challenging is money, then there's a risk of failure. But let me bring that. I understand that, and that's probably a good thing to do. But what if you don't learn of, let's say, fraud or deception that affects the share price of the minority until after the merger occurs? You have very good information that there was a fraud, and that as a result of that conduct, the minority share price was depressed. It could have gotten a lot more. Now, what do you do in that circumstance? It's a matter of policy. Isn't it a good idea to get your fair share? And you couldn't bring the action before because you didn't have the information. Your Honor, that is a very interesting question. It is not one that's presented by this case. Well, I think it is. It has to do with can they bring an action following the merger. And I'm just giving you a hypothetical. What if I learn about misrepresentations and fraud that, had I known before, I could have presented perhaps at the evaluation? Your Honor, that question of discovery of new facts after a merger that might give rise to a cause of action for fraud of fundamental unfairness is, that is not what's presented by this case at all. Yes, but suppose, but what's the answer to his question? The answer to the question, Your Honor, is that that's something that the Pennsylvania legislature would itself need to address. Thus far, and I believe on the reading of the statute and on Jones and on cases that have followed on Jones, the answer is actually no. And that's because, Your Honor, there is a countervailing interest that is important for the Court to take into account. That is, it's not simply about preserving the rights of shareholders to protect their interests in a fair process. See, I think the legislature just didn't want mergers to stop. I think they wanted these mergers to go through cleanly. And commerce to move. And commerce to move, exactly. But, you know, these claims against fiduciaries for breach of, I'm sorry, against officers for breach of fiduciary duties are done all the time. They're filed all the time. They don't interrupt mergers. They don't break them apart necessarily. They're essentially claims for fairness. But the other concern that the legislature had and the Supreme Court had in Jones, which, by the way, was not just a rescission case. It was a case where the shareholders wanted damages in the alternative for breach of fiduciary duty. The other interest is that what they wanted to prevent was a situation just like this where shareholders were not concerned about the fairness of the process pre-merger. They just wanted more money for their shares. So they would go forward. Just. Just one. That's one sensitive issue. Absolutely. And the Pennsylvania legislature provided an appraisal proceeding for that. This is not a situation, by the way, Judge Slover, where there's any disappointment at this point on the part of appellants with the results of that appraisal proceeding. The appraisal proceeding is ongoing. It's set for trial in December. Well, they don't think they got enough money. It's as simple as that. And that is exactly the issue being litigated in the appraisal proceeding. That is the other core concern of the Pennsylvania legislature. And the Supreme Court. I tend to agree with that. But what about ñ is there any information here that they've learned subsequent to the appraisal? Well, there couldn't be because the appraisal is still going on. But I understand that you cannot bring this information in the course of the appraisal. Your Honor, the issue in appraisal is just that. That's what Mr. Croner said. He said they're barred from bringing this information in the course of an appraisal. Your Honor, the issues such as the longer-term projections, such as what the value of the company would be or its performance, are things that are calculated by way of discounted cash flow and other analyses into value in the context of an appraisal proceeding. So all his concerns can be addressed in the course of the ongoing appraisal? Yes, Your Honor, because the core of the fiduciary duty complaint is a claim for compensatory damages and for discouragement. That might answer my concerns, but we'll see what he has to say. Your Honor, if I may, the core issue that I don't feel I've had the opportunity yet to fully convey to the Court is the other interest here of the legislature and the Pennsylvania Supreme Court is to prevent the situation where you have an appellant who lets a merger go forward because they just want more money and they can get it in an appraisal proceeding. And then they go forward with that appraisal proceeding in the Pennsylvania State Court. They decide, they see who the judge is, they see what direction the case is going, and then they decide a couple of years later, as occurred here, you know what, we'd like to try a different forum. And then they go and file another action also claiming compensatory damages, also claiming discouragement, alleging the same conduct that was available to them years earlier and call it breach of fiduciary duty, either next door in another common police court, in State court, or in this case they go to Federal court. That is the other issue that they wanted to prevent. Didn't we predict in Harris v. Woods that the Pennsylvania Supreme Court would reject the defendant's interpretation of the appraisal statute, I asked this before but I didn't get an answer, as a bar to other causes of action for breach of fiduciary duty? I mean, that's 857F second at 187. Didn't we predict that? Your Honor, what this Court predicted in Harris v. Woods is only that an action that is brought pre-merger so that it's consistent with the preservation of that right to claim fraud or fundamental unfairness under the statute would continue beyond the point of the merger. We didn't make a distinction between pre-merger and post-merger in Harris v. Woods, did we? Respectfully, Your Honor, I believe that the Court there in fact did. Chief Judge Gibbons no less than three times in the course of the analysis references pre-merger status. And what he points out is that not only, as Appellant has stated, that that case was filed pre-merger, but he then goes on to discuss that the Jones and Laughlin case, the Pennsylvania Supreme Court case, had spawned a pre-merger action just like this one, and that in this Court's view, that by noting the propriety of the pre-merger action, the Pennsylvania Supreme Court was tacitly approving it. That is the concept of a pre-merger action. Now, whether a pre-merger action survives, you know, an action that's brought for injunctive relief based on breach of fiduciary duties survives the merger and can then proceed as a damages action is a very interesting question. But that is not what is going on here. What's going on here is a post-merger, two post-merger duplicative actions that are both seeking the value of the shares. Can I ask you a question, Ms. Krauss? I'm sure you've looked at the appellant's complaint. You know all the assertions that they're making. Are all of their assertions and concerns cognizable in the evaluation proceeding? Your Honor, the case is going to be ---- Do you understand my question? I think I do, Your Honor. There are particular factual allegations that they make that don't have a place in an appraisal proceeding. Such as what do they allege that can't be raised in the appraisal proceeding? Such as, Your Honor, they make allegations about the independent directors not being independent because they included a former chief financial officer of the company and included a former director of the company. But essentially they're saying we didn't get our fair share. Absolutely. Or we're not going to get our fair share. But they can make that claim in the evaluation proceeding, I assume. That is exactly the purpose of an appraisal proceeding. Well, I'm not sure they can. We'll have to hear from the other side. I don't know the answer to that. Was her time up? I didn't wave her away. Can you answer the question that Judge Wentworth raised? I can, Your Honor. Fair share and fair price are two entirely different concepts. The appraisal proceeding is limited to fair price. The price on the date immediately preceding the merger. We have alleged in our complaint, all of which we learned subsequent to the merger, during the course of discovery in the appraisal proceeding, that the insiders hid future performance statistics from us. Hid the fact that they were sitting on the biggest contractual backlog in IREC's history. Hid the fact that the company's performance exploded after the merger in 2006. None of which is cognizable by the appraisal court. The appraisal court is prohibited from considering future performance as a factor in determining fair value, because fair value is determined on the date immediately preceding the merger. That's not fair share. We want our fair share. And even in Herskowitz, you'll note that the district court, one of the things that Chief Judge Gibbon corrected, was the district court precluded at the trial stage any evidence of future performance because the district court assumed that you couldn't take into account any post-merger conduct. Well, that means that every time there is a merger and if the stock is sold publicly, that there's an explosion in value, you're going to have a lawsuit? Absolutely not, Your Honor. Why not? Because one of the unique features, first of all, of this case is the presence of a controlling majority. If these were just directors, the directors owe a fiduciary duty only to the corporation. It's because under Pennsylvania law, Pennsylvania specifically recognizes the existence of a fiduciary duty running from the controlling majority to the minority shareholders that there is a fiduciary duty claim here. You won't have a squeeze-out if you don't have a controlling majority. You only get, you only can squeeze the minority out when you have a controlling majority of the votes. So you would need a, the circumstances of a squeeze-out, cash-out merger, coupled with a controlling majority, coupled with an explosion of future performance. The point I'm making, Your Honor, is there is no way that the damages or that the remedy in the appraisal proceeding is congruent with the remedy available in this action. It is impossible. The last, one of the last points I want to make is to address Judge Garth's point. No, I think that's an important. You're going to address Judge Garth's point in a minute. But that's a very important point. It is, Your Honor. It's the future, recissory damages, absolutely unattainable in an appraisal proceeding, again, because the appraisal proceeding can never have the actual parties that did the wrongdoing. How can you ever have that kind of discovery? You say recissory damages. Recissory damages, in other words, are damages that embrace the fact that I should be rewarded for the future performance of the company, which the insiders knew when they set my share price, but they never revealed to me. And they had a fiduciary duty to let me know, to let all the shareholders know when they were voting in this transaction. You didn't have access to the same information so that you could project the future price of your share? It's not cognizable in the appraisal proceeding. Because you're in a minority? Because the appraisal proceeding doesn't take into account future performance in any way. It doesn't consider that they were sitting on their largest contract backlog. Believe me, unlike opposing counsel, I've been involved day to day in the appraisal proceeding, and I've been told I'm not entitled to receive discovery on those points because the appraisal proceeding is limited to fair value prior to the merger. Now, the fiduciary duty claim is asserted against the majority shareholders, right? That's correct. The appraisal remedy is asserted against the corporation. Well, I did not assert it against you. The corporation sued my client in the appraisal proceeding to fix the fair value of the shares, which is why, as I say, there's no discovery in that proceeding about future performance. It would be impossible, to get back to Judge, it would be impossible to bring the claims in this case pre-merger if you accept the district court's conclusion, which I believe is correct, on when the statute of limitations began to run here. When does my client's status as an IREC stockholder change? It changes when the merger is executed. It doesn't change when they talk about it. It doesn't change when they give notice to him. It doesn't change when they send out the proxy statement because nothing has fundamentally changed about his position as an IREC shareholder. That changes on the day the merger is executed. And yet, if you're telling me I have to bring these claims pre-merger, they're not even actionable pre-merger. They don't become actionable until the merger is consummated. I have no forum if I can't do it here. Ginsburg. Len, did you have a question? Mitchell. No, I do not. Ginsburg. I thought you were going to raise one. Mitchell. I was, but I've decided not to. I've decided not to. Ginsburg. Is Mitchell Partners a person or is there a Mr. Mitchell? Mitchell. There is a Mr. James Mitchell. He is the general partner of Mitchell Partners. Ginsburg. His last name is not Partners. Mitchell. No, sir. No, ma'am, it's not. Thank you. Wait a minute. Wait. Do you have any questions? Len, you have no questions? I have no further questions. Thank you. Thank you, Your Honors. We will take this matter under advisement. Thank you. So your Deckard office was here in two different capacities. Yes, ma'am. Your capacity is getting paid. We have to do that so we can keep doing so much pro bono work. Okay. Good answer. Judge Slaughter, what are we going to do now? What would you like to do? Do you want to confer here or do you want to confer from my chambers? How do you want to work it? General, you're all dismissed. In your chambers.